

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-10-2007

# Costa v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1386

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Costa v. Atty Gen USA" (2007). *2007 Decisions.* Paper 111.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/111

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1386
_____

GILSON COSTA,
*Petitioner*,

vs.

ATTORNEY GENERAL OF
THE UNITED STATES OF AMERICA,
*Respondent.*

_____

On Petition for Review of a Final Decision
of the Board of Immigration Appeals
BIA No. A73-171-992
Immigration Judge: Henry S. Dogin

_____

Submitted on November 28, 2007
_____

Before: BARRY, FUENTES and GARTH, Circuit Judges,
(Opinion Filed: December 10, 2007)

_____

**OPINION**
_____

GARTH, *Circuit Judge*:

_____Gilson Costa ("Costa") petitions this Court for review of the Board of Immigration Appeals ("BIA" or "Board") order of December 30, 2005 affirming the November 22, 2004 decision of the Immigration Judge ("IJ") denying Costa's application for cancellation of removal and his request for voluntary departure. Costa contends that the BIA and IJ erred in holding that he lacked good moral character by reason of Costa having given false testimony, because he corrected his prior inaccurate statements voluntarily and prior to exposure by the government. We agree and therefore remand to the BIA for further proceedings to determine whether Costa's deportation would constitute exceptional and extremely unusual hardship to his wife and two children and whether he consequently is eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1).

## I.

A native of Brazil and born on April 13, 1947, Gilson Costa entered the United States on April 5, 1992 on a six-month non-immigrant visa. Having overstayed the visa period without authorization, Costa filed a timely application for asylum on October 18, 1993 with the Immigration and Naturalization Service ("INS"). Costa was summoned

for an asylum interview on January 30, 2003, at which he appeared without counsel.[1] At the interview, he stated that he was a homosexual and that his sexual orientation was the basis for his asylum application. The asylum officer denied the application, on the grounds that Costa failed to establish actual past persecution or a well-founded fear of future persecution, and referred the case to the immigration judge.

On December 23, 2003, Costa married Sonia Paquet, a lawful permanent resident with two children who are American citizens – all of whom he has helped support ever since Sonia's first husband (who was also Costa's close friend) passed away from a heart attack in 1993. The record also shows that Costa began living with Sonia and the children in 2002.

Upon obtaining counsel, Costa withdrew his asylum application and filed with the immigration court an application for cancellation of removal or, in the alternative, voluntary departure. Costa contended that he was eligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1), because he had established presence in the United States for at least 10 years, provided evidence showing that he had good moral character, had no criminal record, and demonstrated that his deportation would constitute exceptional and extremely unusual hardship to his wife and two children.

As part of his application for cancellation of removal, Costa submitted on October

---

[1] It is unclear from the record why Costa's asylum interview occurred nearly *ten years* after his application.

28, 2004 an affidavit, stating that he was not and had never been a homosexual and that his statements during the asylum interview were incorrect. On the basis of this voluntary admission, the IJ found that Costa was not a person of good moral character – which is required for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(B) – because he had given false testimony for the purpose of obtaining a benefit under the immigration laws, in violation of 8 U.S.C. § 1101(f)(6).

Without the finding of lack of good moral character, the IJ observed Costa had a strong case for cancellation of removal since there was evidence that his deportation would constitute exceptional and extremely unusual hardship to his wife and two children. The IJ noted that:

> Here they had a father, the father died. They went through a tremendous trauma, especially Sonya (sic). What I would be doing again, is inducing greater trauma. Because now they have an opportunity to keep Mr. Costa here, I think the trauma that would result [from his deportation] would be exceptional and extremely unusual hardship.

A-R at 36.

With respect to the specific impact on Sonia, who had herself recently been granted cancellation of removal, the IJ stated:

> I recognize that she can pick herself up again and work hard. She's a solid person. But again, it's almost like the Chinese water torture, where you say to someone we give it to you, but we take it back and that would be terribly traumatic and that's why the psychiatrist's analysis [concluded] that [Costa's deportation] would be difficult. I think that, giving and then taking away, would be so terribly traumatic that [it]

would result in exceptional and extremely unusual hardship.

A-R at 36-37.

However, the IJ denied Costa cancellation of removal and voluntary departure on the grounds of lack of good moral character. On December 30, 2005, a single-member panel of the Board of Immigration Appeals adopted and affirmed the IJ's decision in a *per curiam* order. Costa filed a timely petition for review with this Court on January 27, 2006.

In his petition, Costa argues that the BIA erred in affirming the IJ's decision because (1) he corrected his prior inaccurate statements voluntarily and prior to exposure by the government such that they did not constitute false testimony and (2) in any event, statements made in a non-adversarial proceeding do not constitute testimony.

## II.

Before turning to the merits of Costa's claims, we must determine whether we have jurisdiction to do so. The Attorney General contends that Costa failed to exhaust his administrative remedies on these issues by not raising them with the BIA. Resp. Br. at 14.

Under Third Circuit precedent, exhaustion of remedies requires solely that the alien raise an issue in the notice of appeal and does not necessitate any further briefing. *Bhiski v. Ashcroft*, 373 F.3d 363, 368-69 (3d Cir. 2004). Costa satisfied this requirement

by claiming in the Notice of Appeal to the BIA that the IJ's "holding is incorrect because . . . [t]he respondent voluntarily and without delay recanted that [prior inaccurate] testimony." A-R at 22.

Consequently, we have jurisdiction pursuant to 8 U.S.C. § 1252(a), which confers exclusive jurisdiction upon the courts of appeals to review final orders of deportation, exclusion, or removal issued by the Board. Where, as here, the Board adopts the immigration judge's decision and adds its own reasons, this Court reviews both decisions. *Fadiga v. Atty. Gen.*, 488 F.3d 142, 153, n. 16 (3d Cir. 2007). Our standard of review for questions of law is *de novo*. *Id.* at 153-54. We review findings of fact for substantial evidence and, therefore, may not set them aside unless a reasonable fact-finder would be compelled to find to the contrary. *Gabuniya v. Atty. Gen.*, 463 F.3d 316, 321 (3d Cir. 2006).

## III.

### A.

The main question in this appeal is whether inaccurate statements provided under oath during an asylum interview constitute false testimony for purposes of establishing an alien's lack of good moral character under 8 U.S.C. § 1101(f)(6), even though they were voluntarily corrected by the alien prior to any exposure by the government.

Costa argues that the immigration judge and the BIA erred in holding that he

lacked good moral character by providing false testimony because this statutory bar does not apply when the alien "voluntarily and prior to any exposure of the attempted fraud corrects . . . his testimony." Pet. Br. at 11 (quoting *Matter of M*, 9 I & N Dec. 118 (BIA 1960). Costa notes that he "made this voluntary admission before his hearing on the merits in the removal proceeding that followed the asylum interview, admitting, without reservation, much less prompting from the government, that he had not told the truth in his asylum interview." Pet. Br. at 11-12. The Attorney General responds that Costa's correction of his prior statements was "untimely" since it did not occur before the asylum officer but instead before the immigration judge. Resp. Br. at 14.

Moreover, Costa argues that the statements provided during an asylum interview do not constitute "testimony" because they are "oral responses to non-adversarial questions in an asylum interview, where the government is not represented by cross-examining counsel." Pet. Br. at 14. Costa's statements under oath during the asylum interview constituted testimony under the statute.

**B.**

As to the question whether Costa gave false testimony, the BIA has repeatedly held that 8 U.S.C. § 1101(f)(6)[2] does not bar a person from establishing good moral

---

[2] 8 U.S.C. § 1101(f) sets forth, in relevant part, that:

. . . No person shall be regarded as, or found to be, a person of good moral

-7-

character when he has "voluntarily and prior to any exposure of the attempted fraud corrected his testimony." *Matter of M*, 9 I & N Dec. 118, 119 (BIA 1960). Similarly, the BIA has "held that where an alien, in an immigration proceeding, testifies falsely under oath as to a material fact, but voluntarily and without prior exposure of his false testimony, comes forward and corrects his testimony, perjury has not been committed." *See also Matter of R-R*, 3 I & N. Dec. 823, 825 (BIA 1949).

We note that the facts in this case are not in dispute. Costa provided inaccurate statements under oath during an asylum interview on January 30, 2003. Before the first full hearing on the merits before an immigration judge on November 22, 2004, Costa corrected these statements in a sworn affidavit submitted on October 28, 2004. Indeed, there is nothing in the record and no allegation suggesting that the inaccuracy of these statements would have been revealed by the government without Costa's voluntary admission. Consequently, based on the applicable BIA doctrine, we hold that Costa's inaccurate statements to the asylum officer did not constitute "false testimony" under 8 U.S.C. § 1101(f)(6) because he corrected them voluntarily and prior to any exposure by the government.

## C.

Good moral character is only one of four elements necessary for cancellation of

---

character who, during the period for which good moral character is required to be established, is, or was – . . . (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter. . . .

removal under 8 U.S.C. § 1229b(b)(1), which provides that:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien –
>
> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> (B) has been a person of good moral character during such period;
> (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and
> (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

The IJ found that Costa satisfied the first and third elements, but not the second, and so did not reach the issue of whether Costa's deportation would constitute exceptional and extremely unusual hardship to his wife and two children. Since we have no jurisdiction to determine eligibility for cancellation of removal under the statute, we must remand the case for further proceedings.

## IV.

We hold that the BIA and the IJ erred in finding that Costa lacked good moral character. We therefore remand for further proceedings consistent with this Opinion to determine whether Costa's deportation would constitute exceptional and extremely

unusual hardship to his wife and two children and whether he is thus eligible for

cancellation of removal under 8 U.S.C. § 1229b(b)(1).