

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4431

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Zheng v. Atty Gen USA" (2008). *2008 Decisions*. Paper 1615.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1615

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 06-4431

———


JIAN KANG ZHENG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent


———

On Petition for Review of an Order
of the Board of Immigration Appeals
(No. A77-977-913)
Immigration Judge:  Hon. Donald Ferlise

———

Submitted Under Third Circuit LAR 34.1(a)
February 11, 2008

Before:  SLOVITER, SMITH, and STAPLETON, Circuit Judges

(Filed February 12, 2008)

———

OPINION

———

SLOVITER, <u>Circuit Judge</u>.

Jian Kang Zheng petitions for review of an order of the Board of Immigration Appeals ("BIA") adopting and affirming the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").

**I.**

Zheng is a native and citizen of the People's Republic of China who entered the United States without a valid entry document on October 4, 2001. At the evidentiary hearing before the IJ, Zheng testified that after the birth of his son, his wife was required to have an IUD inserted against her will, and go for a physical check-up three times a year. She nevertheless became pregnant again in 2001, which prompted Zheng and his wife to go into hiding in Foo Chow. They were discovered in May of 2001 when family planning authorities knocked on their door. After Zheng attempted to argue and struggle with these officials, they took his wife and performed an abortion the next day. One month later, an IUD was again inserted in his wife.

At the hearing, Zheng admitted that he had lied both during his airport and credible fear interviews, conducted on October 5 and 17, 2001, respectively. At the airport interview, he told the immigration officer that he was afraid to return to China because he feared being sterilized. Similarly, at the credible fear interview he stated that Chinese family planning officials wanted to sterilize him, that they had already sterilized his wife, and that he had paid a 5,000 RMB fine after his wife was forced to undergo an abortion.

2

Zheng also stated at that interview that he was "afraid at the airport and so did not explain everything that the birth control officials did to my wife and to me." App. at 117.

When asked at the hearing before the IJ why he lied during his airport interview about these facts, Zheng explained that "the snakehead [smugglers] told me I had to mention about the sterilization and the U.S. Government will keep me here. And if I did not tell about sterilization, the U.S. Government will send me back to China, so I lied to the officer that time." App. at 90. He gave the same explanation as to why he lied about this at the credible fear interview, where he also lied about the 5,000 RMB fine because "at the detention facility, the people there were also detained, told me to tell more problems in China, you will get bail out easier." App. at 92.

Another contradiction arose regarding whether Zheng fought with Chinese officials when they attempted to take his wife for an abortion or for an IUD insertion. Zheng explained his differing airport statement as due to his nervousness and because he did not express himself very well, which the IJ found conflicted with Zheng's direct examination in which he testified that snakeheads had told him to lie to stay in this country. Moreover, Zheng testified very inconsistently regarding his wife's IUD, first stating she had no problems with it but then changing his answer after his wife's affidavit was shown to state the opposite, and explaining the inconsistency by stating that "I don't think this is a family planning problem." App. at 100. Zheng also testified that other detainees told him to say "something more, more theories, problems you have, the easier" it is to get asylum. App. at 102. There were further contradictions regarding how long

3

Zheng and his wife went into hiding, and again Zheng admitted to lying at his interviews.

The IJ denied Zheng's application for asylum, withholding of removal, and CAT relief on December 20, 2004. He found that Zheng was not credible:

> [Zheng] is telling the Court that he lied to the immigration officers under oath but that he is telling the Court the truth today, but he has failed to give the Court any reason to believe that he is indeed telling me the truth today. [Zheng's] history of dealing with government officials here in the United States is one of deceit and deception and I have no reason to believe that [he] has changed his presentation today and that it contains anything other than further deceit, further deception and further fabrication.

App. at 42-43. Recognizing this court's caution in Zubeda v. Ashcroft, 333 F.3d 463, 476 (3d Cir. 2003), against placing too much weight on discrepancies between an asylum application and subsequent testimony, the IJ cited Xie v. Ashcroft, 359 F.3d 239, 246 (3d Cir. 2004), in which the discrepancies went "to the heart of the claim." Here, too, the IJ found the discrepancies between Zheng's earlier statements, his wife's statement, and his own impeachment of his testimony "do indeed go to the heart of the case in chief" and are material and substantial. App. at 44. The IJ also found Zheng's application to be frivolous.

The BIA affirmed the decision of the IJ without opinion. We have jurisdiction over the petition under 8 U.S.C. § 1252.

4

**II.**

Under the substantial evidence standard, an "adverse credibility determination must be upheld on review unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Xie, 359 F.3d at 243 (quoting Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)). "Adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Gao, 299 F.3d at 272. An IJ must support his or her credibility findings with "specific, cogent reason[s] . . . ." Dia v. Ashcroft, 353 F.3d 228, 250 (3d Cir. 2003) (en banc) (internal citation and quotation marks omitted).

In this case, substantial evidence supports the IJ's adverse credibility determination, as Zheng demonstrated a propensity to change his story multiple times. See Balogun v. Ashcroft, 374 F.3d 492, 504 (7th Cir. 2004). The discrepancies go to the heart of Zheng's claim, for he explicitly testified that he lied to the immigration officers in his earlier statements because he wanted to stay in the United States. The details referred to by the IJ were not minor; Zheng admitted to numerous misrepresentations, which the IJ considered in light of the entire record. See Secaida-Rosales v. INS, 331 F.3d 297, 308 (2d Cir. 2003) (explaining that "outright inconsistencies" and "omissions must be measured against the whole record before they may justify an adverse credibility determination"). Zheng's claim that he was credible at the hearing before the IJ is not a sufficient basis to overturn the IJ's credibility determination. Finally, the IJ found Zheng's recantation over three years after his initial lies not timely; we agree with this

5

determination. Cf. Matter of Namio, 14 I. & N. Dec. 412, 414 & n.3 (BIA 1973). The evidence in the record does not compel us to conclude that Zheng was credible, and therefore he could not establish a well-founded fear of future persecution.[1] See INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

The more difficult issue is whether it was appropriate for the IJ to find Zheng's asylum application "frivolous" pursuant to 8 U.S.C. § 1158(d)(6). There are severe consequences for filing a frivolous asylum application. See id.; Muhanna v. Gonzalez, 399 F.3d 582, 588 (3d Cir. 2005). Under the implementing regulation, 8 C.F.R. § 208.20, "a finding of frivolousness does not flow automatically from an adverse credibility determination . . . the regulation requires more: a finding of deliberate fabrication of a 'material element' of an application, plus an opportunity for the alien to account for inconsistencies." Muhanna, 399 F.3d at 589.

Based on the finding that Zheng had deliberately fabricated material facts, the IJ, after having warned Zheng of the consequences of filing a frivolous application at the beginning of his hearing, found that Zheng was "an entirely incredible individual who has filed a totally incredible application, an application which the Court deems due to the nature of the contradictions, due to the nature of the fraudulent testimony to be indeed a frivolous application for asylum." App. at 43. Such findings satisfy the mandate of 8

---

[1]Zheng has waived his claim under the CAT by failing to raise the issue in his petition for review. See He Chun Chen v. Ashcroft, 376 F.3d 215, 221 (3d Cir. 2004).

C.F.R. § 208.20. The basis of Zheng's asylum claim is persecution as a result of Chinese family planning policies; however, the IJ found that Zheng's testimony contradicted his earlier statements to immigration officers, contradicted his wife's statement, and contradicted his own testimony at the hearing. On this basis, the IJ determined that Zheng deliberately fabricated his story and that there was "no reason to believe that [he] has changed his presentation today and that it contains anything other than further deceit, further deception and further fabrication." App. at 43. Zheng was given sufficient opportunity to explain his inconsistent testimony, and indeed he gave reasons for his earlier misrepresentations, but in light of the obvious contradictions at the heart of the case, we conclude that substantial evidence supports the IJ's finding that Zheng fabricated a material element of his application.

## III.

For the above-stated reasons, we will deny the petition for review.