1 
2 
 UNITED STATES DISTRICT COURT 
3 
 DISTRICT OF ALASKA 
4 
5 
6 DEBRA BEY, individually and on ) 
 behalf of all others similarly situated, ) 
7 
 ) 
8 Plaintiff, ) 3:18-CV-00120 JWS 
 ) 
9 
 vs. ) ORDER AND OPINION 
10 ) 
 ) [Re: Motion at docket 19 ] 
11 DYNAMIC COMPUTING SERVICES ) 
 (DCS) CORP., ) 
12 
 ) 
13 Defendant. ) 
 ) 
14 
15 
16 I. MOTION PRESENTED 
17 
 At docket 19 Defendant Dynamic Computing Services (“DCS”) filed a motion for
18 
 summary judgment or, in the alternative, a motion for partial summary judgment on the
19 
20 class aspect of the complaint. Plaintiff Debra Bey (“Plaintiff”) responded at docket 23. 
21 DCS replied at docket 26. Oral argument was requested but denied at docket 29.
22 
 II. BACKGROUND 
23 
 DCS hired Plaintiff on or about April 25, 2015, to work as a “Go-Live Support”
24 
 consultant at Alaska Regional Hospital for the period of May 12, 2015, through June 25,
25 
26 2015. DCS is a Texas corporation providing information technology educational
27 services for the healthcare industry. DCS had a contract with Alaska Regional Hospital
28 
 that required it to locate and hire consultants knowledgeable and skilled with a medical
1 software program called “Epic.” The consultants would be used by Alaska Regional
2 
 Hospital to assist staff during its transition to the software. Except for the six other Go-
3 
 Live Support consultants, no DCS employees worked at the hospital or supervised the
4 
5 consultants. A hospital employee, Kimberly Lowe, was responsible for the hospital’s
6 software transition. The parties dispute how much control and supervision Ms. Lowe
7 
 had and exercised over the DCS consultants. It is, however, undisputed that Plaintiff
8 
 was responsible for accurately recording her own time and submitting her time reports
9 
 to DCS’s payroll department for processing. Plaintiff was paid at the rate of $45 per
10 
11 hour. DCS classified Go-Live Support consultants as exempt computer employees for
12 purposes of the Fair Labor Standards Act (“FLSA”), and therefore Plaintiff was not paid
13 
 more than her hourly rate for any hours worked above the standard 40-hour week. 
14 
 Almost three years after her one-month position with DCS at Alaska Regional
15 
16 Hospital, in May of 2018, Plaintiff filed a class action complaint against DCS, alleging
17 that DCS violated the FLSA “by knowingly suffering and/or permitting [Plaintiff] and the
18 
 putative [c]lass members . . . to work in excess of 40 hours per week without properly
19 
 compensating them at an overtime premium rate for these overtime hours.” She alleges
20 
 that DCS’s actions were willful in that DCS knew Plaintiff and the class members were
21 
22 working more than 40 hours per week without receiving the required overtime
23 compensation and that it lacked “any good-faith basis” to believe Plaintiff and the class
24 
 members were exempt from the FLSA’s overtime payment requirements. 
25 
 DCS requests that the court grant it summary judgment. It argues that Plaintiff’s
26 
27 claim fails as a matter of law because she filed her complaint after the standard two-
28 year statute of limitations, and there is no evidence of wilfulness or recklessness on its
 -2- 
1 part that would support applying the extended three-year statute of limitations. DCS
2 
 also argues that, regardless of the statute of limitations, summary judgment is
3 
 warranted because Plaintiff was an exempt employee as a matter of law due to the
4 
5 nature and duties of her position and therefore was not entitled to overtime pay under
6 the FLSA. Alternatively, in the event the court finds a basis to allow Plaintiff’s claim to
7 
 proceed, DCS asks that the court dismiss Plaintiff’s class claim. 
8 
 In reply, Plaintiff argues that there are issues of fact surrounding the willfulness of
9 
 DCS’s failure to pay Go-Live consultants overtime. She also argues that whether her
10 
11 position qualified as an exempt one under the FLSA is a factual issue for the jury given
12 the conflicting evidence in the record. Plaintiff, however, concedes that her claim
13 
 cannot proceed as a class action and has agreed to proceed individually. 
14 
 III. STANDARD OF REVIEW 
15 
16 Summary judgment is appropriate where “there is no genuine dispute as to any
17 material fact and the movant is entitled to judgment as a matter of law.”1 The materiality
18 
 requirement ensures that “[o]nly disputes over facts that might affect the outcome of the
19 
 suit under the governing law will properly preclude the entry of summary judgment.”2 
20 
 Ultimately, “summary judgment will not lie if the . . . evidence is such that a reasonable
21 
22 jury could return a verdict for the nonmoving party.”3 However, summary judgment is
23 mandated “against a party who fails to make a showing sufficient to establish the
24 
25 
26 1Fed. R. Civ. P. 56(a). 
27 2Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). 
28 3Id. 
 -3- 
1 existence of an element essential to that party’s case, and on which that party will bear
2 
 the burden of proof at trial.”4 
3 
 The moving party has the burden of showing that there is no genuine dispute as
4 
5 
 to any material fact.5 Where the nonmoving party will bear the burden of proof at trial on
6 a dispositive issue, the moving party need not present evidence to show that summary
7 
 judgment is warranted; it need only point out the lack of any genuine dispute as to
8 
 material fact.6 Once the moving party has met this burden, the nonmoving party must
9 
 set forth evidence of specific facts showing the existence of a genuine issue for trial.7 
10 
11 All evidence presented by the non-movant must be believed for purposes of summary
12 judgment and all justifiable inferences must be drawn in favor of the non-movant.8 
13 
 However, the non-moving party may not rest upon mere allegations or denials, but must
14 
 show that there is sufficient evidence supporting the claimed factual dispute to require a
15 
16 
 fact-finder to resolve the parties’ differing versions of the truth at trial.9 
17 IV. DISCUSSION 
18 
 An FLSA plaintiff may recover for unlawfully withheld overtime pay for the two
19 
 years preceding the date the complaint is filed.10 The two-year limitations period,
20 
21 
 4Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). 
22 
 5Id. at 323. 
23 
 6Id. at 323-25. 
24 
25 7Anderson, 477 U.S. at 248-49. 
26 8Id. at 255. 
27 9Id. at 248-49. 
28 1029 USC § 255(a). 
 -4- 
1 however, may be extended to three years if the defendant employer’s FLSA violation is
2 
 deemed “willful.”11 Plaintiff’s claim falls outside the standard two-year limitations period,
3 
 as she worked for DCS from May 12, 2015, through June 25, 2015, and did not file her
4 
5 complaint by June of 2017. Plaintiff concedes as much, however, she contends that the
6 extended three-year limitations period applies to her claim because DCS acted willfully
7 
 in its failure to pay her overtime. Willfulness requires a showing that the employer
8 
 “knew” its conduct was prohibited by the FLSA or “showed reckless disregard for the
9 
 matter.”12 Acting unreasonably with regard to its legal obligations under the FLSA is not
10 
11 enough.13 Willfulness requires some actual awareness of the potential FLSA violation,
12 not just of the FLSA in general, and a failure to adequately ensure compliance.14 The
13 
 court will not presume an employer’s conduct to be willful in the absence of evidence.15 
14 
 That is, there needs to be some evidence that an employer disregarded the possibility
15 
16 
 of the FLSA violation.16 
17 
18 
19 
 11Id. 
20 
 12McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988) 
21 
 13Id. at 135 n.13. 
22 
 14Id. at 133, 135 n.13. (rejecting a standard of wilfulness that would merely require that
23 an employer knew that the FLSA was in the picture, as well as a standard that “would deem an
 FLSA violation willful ‘if the employer, recognizing it might be covered by the FLSA, acted
24 
 without a reasonable basis for believing that it was complying with the statute’” and that would
25 “permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a
 completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all
26 respects). See also Souryavong v. Lackawanna Cnty., 872 F.3d 122, 126 (3d Cir. 2017).
27 15Alvarez v. IBP, Inc., 339 F.3d 894, 909 (9th Cir. 2003). 
28 16Id. at 908-09. 
 -5- 
1 The evidence in the record fails to provide any basis from which a jury could find
2 
 willfulness under even the most forgiving application of the requisite standards. In
3 
 Flores v. City of San Gabriel,17 city police officers brought an FLSA claim against their
4 
5 city employer, alleging that the city failed to include cash payments made in lieu of
6 medical benefits when calculating the officer’s rate of pay for overtime purposes. The
7 
 Ninth Circuit held that the pay policy violated the FLSA and applied the extended three-
8 
 year statute of limitations based on a finding of willfulness. It was sufficiently willful that
9 
 the city had simply implemented the policy knowing the risk that classifying the new
10 
11 payments as benefits rather than as part of the officers’ regular rate of pay could run
12 afoul of the FLSA: “An employer’s violation of the FLSA is ‘willful’ when it is ‘on notice of
13 
 its FLSA requirements, yet [takes] no affirmative action to assure compliance with
14 
 them.’”18 Based on Flores, an employer’s implementation of a new pay policy that
15 
16 clearly affects overtime pay rates, in and of itself, is enough to put the employer on
17 notice of a need to ensure and further investigate FLSA compliance, but this case does
18 
 not fall within the broad ambit of Flores. It does not involve the implementation of a new
19 
 payment structure created for existing non-exempt employees, subject to FLSA
20 
 overtime requirements, that would clearly reduce those employees’ rate of overtime
21 
22 pay. 
23 The issue here is whether the classification of Plaintiff’s computer-related
24 
 position as exempt, and therefore not subject to overtime pay requirements, was willful. 
25 
26 
27 17824 F.3d 890 (9th Cir. 2016). 
28 18Id. at 906 (quoting Alvarez, 339 F.3d at 909). 
 -6- 
1 There is no evidence that DCS had awareness that the pay arrangement with Go-Live
2 
 Support consultants risked violating the FLSA given the exemption for computer-related
3 
 employees under the statute. That exemption applies to the following: 
4 
5 [An] employee who is a computer systems analyst, computer programmer,
 software engineer, or other similarly skilled worker, whose primary duty is--
6 
 (A) the application of systems analysis techniques and procedures, including
7 
 consulting with users, to determine hardware, software, or system functional
8 specifications; 
9 (B) the design, development, documentation, analysis, creation, testing, or
 modification of computer systems or programs, including prototypes, based
10 
 on and related to user or system design specifications; 
11 
 (C) the design, documentation, testing, creation, or modification of computer
12 programs related to machine operating systems; or 
13 
 (D) a combination of duties described in subparagraphs (A), (B), and (C) the
14 performance of which requires the same level of skills, and 
15 who, in the case of an employee who is compensated on an hourly basis, is
16 
 compensated at a rate of not less than $27.63 an hour . . . .19 
17 The classification of the Go-Live Support position, whether or not ultimately correct, was
18 
 at least reasonable given the record provided regarding the job description and duties
19 
 performed.20 
20 
 There is no evidence that DCS had previously misclassified employees as
21 
22 exempt. There is no evidence that there were possible classification issues or
23 complaints or accusations related to any of its other positions or types of employees in
24 
25 
 1929 U.S.C. § 213(a)(17). 
26 
 20There is evidence in the record that Plaintiff’s duties involved “consulting with users at
27 the Hospital to determine software and system functional specification” and that she was
 responsible for documenting problems and troubleshooting workflow and technical issues. See
28 doc. 20-2 at ¶¶ 10-13, doc. 20-4 at p. 3. 
 -7- 
1 the past.21 More specifically, there is no evidence of red flags surrounding the issue of
2 
 whether the actual duties of the Go-Live Support consultants fit within the statute’s
3 
 exception for computer consultants. The only evidence supporting DCS’s notice of the
4 
5 potential FLSA issue is set forth in Plaintiff’s affidavit, where she states as follows:
6 I along with several of my colleagues, complained to our supervisors about
 not being paid properly, specifically not receiving time and a half for all hours
7 
 worked over forty each week. When I complained to my supervisor, Kimberly
8 Lowe, in person, that I was not receiving overtime compensation, I was told
 that I was only contracted to work straight time.22 
9 
 The statement is not supported by any details or supporting evidence. There is no
10 
11 identification of a DCS manager or other adminstrative employee to whom she and her
12 colleagues complained, in what form those complaints were made, and when such
13 
 complaints were made. There is no supporting deposition testimony and no emails or
14 
 other documentary evidence to support her statement. A self-serving affidavit, without
15 
16 
 more, is simply not enough to withstand summary judgment.23 Moreover, the evidence
17 submitted by DCS supports its position that Plaintiff was not making complaints about
18 
 overtime pay or exempt status. She wrote to inquire about her per diem pay and
19 
20 
21 
22 21See Haro v. City of Los Angeles, 745 F.3d 1249, 1258 (9th Cir. 2014) (holding that
 city’s prior litigation of whether to classify certain positions as falling under the law-enforcement
23 or fire-related exemption in 29 U.S.C. § 207(k) and prior rulings that it had misclassified those
 positions were red flags that should have prompted the city to seek guidance as to how to
24 
 classify the plaintiffs’ position). 
25 
 22Doc. 23-1 at ¶ 21. 
26 
 23See F.T.C. v. Publ’g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (noting
27 that “[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is
 insufficient to create a genuine issue of material fact.); see also Burchett v. Bromps, 466 Fed.
28 Appx. 605, 607 (9th Cir. 2012). 
 -8- 
1 eligible reimbursements after her employment period came to an end but did not
2 
 mention any other payment concerns.24 
3 
 Plaintiff argues that the pay reports and stubs show that DCS knew she was
4 
5 working more than forty hours a week and therefore was acting willfully in its failure to
6 pay her overtime. She cites an unpublished Ninth Circuit case from 2001, Ackler v.
7 Cowlitz County, in support.25 That case is not persuasive here. Ackler does not hold
8 
 that knowing an employee works over 40 hours a week is enough to establish
9 
 willfulness in all circumstances. Ackler involved the interplay between the FLSA and a
10 
11 collective bargaining agreement and the clearly established law that a collective
12 bargaining agreement cannot waive the FLSA overtime requirements. It did not involve
13 
 an employer who reasonably believed that the employee was exempt under the statute.
14 
 V. CONCLUSION 
15 
16 Based on the preceding discussion, DCS’s motion for summary judgment is
17 GRANTED. 
18 
 DATED this 19th day of December 2019. 
19 
 /s/ JOHN W. SEDWICK 
20 SENIOR JUDGE, UNITED STATES DISTRICT COURT 
21 
22 
23 
24 
25 
26 
27 24Doc. 26-4, Doc. 26-5, Doc. 26-8. 
28 257 Fed. Appx. 543, 545 (2001). 
 -9-