NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0350n.06

**No. 09-3609**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ELIAS MOHAMAD HASSAN DEBEK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | ON PETITION FOR REVIEW OF AN |
| v. | ) | ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| | ) | |
| ERIC H. HOLDER, JR., Attorney General | ) | |
| | ) | **FILED** |
| Respondent. | ) | **Jun 08, 2010** |
| | ) | LEONARD GREEN, Clerk |

Before:  GILMAN and WHITE, Circuit Judges; and THAPAR, District Judge.[*]

**THAPAR, District Judge.**  Elias Debek, a native and citizen of Lebanon, asks us to review a decision of the Board of Immigration Appeals affirming the Immigration Judge's denial of his request for a continuance of his removal hearing.  Because denial of the continuance was not an abuse of discretion, we deny the petition for review.

I.

Elias Debek ("Debek") was born in Beirut, Lebanon in 1958.  Joint Appendix ("J.A.") at 41. From 1979 until 2000, Debek lived and worked (with legal status) in Saudi Arabia.  *Id.* at 121. Debek and his family left Lebanon in 1979 to survive the war going on at that time.  *Id.* at 45.  He returned to Lebanon for fifteen to twenty days in the summer of 2000.  *Id.* at 121.  Debek stated in

---

[*]     The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

his asylum application that during that visit, Hezbollah members tried to recruit him. *Id.* at 45. After

he refused to join them, Debek claimed that Hezbollah targeted him, and he became afraid for his

safety. *Id.*

In July 2000, Debek traveled to the United States on a non-immigrant visitor visa that expired

on July 4, 2001. *Id.* at 181. On January 10, 2003, the United States served Debek with a notice to

appear and charged him with removability. *Id.* at 185-86. Debek appeared in front of Immigration

Judge Robert Newberry ("IJ") on June 1, 2004, and admitted his removability. *Id.* at 59. That day,

Debek asked for "a couple of months" to put together an application for withholding of removal,

Convention Against Torture ("CAT") protection, and voluntary departure. *Id.* at 60. When the

parties reconvened on August 24, 2004, Debek had filed the application. *Id.* at 62. Debek notified

the IJ that he also had an employment-based petition pending, and that he could soon be eligible to

apply for an adjustment of status.[1] *Id.* The IJ set Debek's merits hearing for October 2005. *Id.* at

63.

At his merits hearing, Debek's attorney noted that he had filed for a continuance, which the

IJ had already denied. *Id.* at 69-70. Debek's request was to postpone the hearing until his

employment-based petition was adjudicated. *See* Supplemental Appendix ("S.A.") at 207-09. The

IJ expressed concern over granting a continuance, since there was no guarantee Debek's employment

petition would ever be approved. J.A. at 70-71. Debek's attorney proposed that if the IJ would

continue the merits hearing, in return Debek would withdraw his asylum application. *Id.* at 71.

---

[1]     "[A]n alien physically present in the United States" who is the beneficiary of "an application
for a labor certification under section 1182(a)(5)(A) . . . may apply to the Attorney General for the
adjustment of his or her status to that of an alien lawfully admitted for permanent residence." 8
U.S.C. § 1225(i)(1). If eligible for an employment-based adjustment of status, Debek would not
need to apply for withholding of removal based on any other grounds.

Debek and his counsel believed that Debek's employment application would be approved by July or August of 2006, and that he could apply for an adjustment of status at that time. *Id.* at 76-78. The government and the IJ agreed to the deal, with the added condition that if the employment application was not approved before the next hearing, Debek would voluntarily depart the United States. *Id.* at 76-79. After Debek consulted his lawyer outside of the courtroom, the IJ spoke with Debek to ensure that he understood the terms of the deal. *Id.* at 79-85. The IJ laid out the following:

> [Y]ou would seek no further delays from [August 2006], that you would withdraw your application for withholding and its relief of asylum that might be viewed as part of that application, not only as it now exists, but any application forever that you might have based on asylum and withholding, that if your application for adjustment was not ripe for a decision by this Court you would be given the chance of applying for voluntary departure and the Court would grant you the 60 days voluntary departure, assuming that you could meet all of the statutory and regulatory requirements.

*Id.* at 84. Debek agreed and the parties adjourned until August 4, 2006. *Id.* at 79, 87-89.

On July 21, 2006, Debek filed what the IJ called a memorandum of changed circumstances. *Id.* at 92. At the August 4, 2006, hearing, Debek informed the IJ that he was still not eligible for an adjustment of status—but that he no longer wished to voluntarily depart. *Id.* He asked for yet another continuance to prepare a new asylum application. *Id.* at 103-04. Debek claimed that he had been prepared to leave the United States voluntarily, pursuant to the terms of the October 2005 agreement, but Israel and Hezbollah were now in a violent conflict. *Id.* at 110-11. He feared that he may not have a home to return to in Beirut. *Id.* at 114. Debek stated he was afraid that if he returned to Lebanon, one of the planes might bomb him and his family. *Id.* at 117. He was also afraid of Hezbollah, although he stated that he had never dealt with them because he had been in Saudi Arabia. *Id.* at 115. When asked why he feared them, he referred to the ongoing conflict and

3

said: "[b]ecause I am a resident of the suburb of Beirut and where am I to go live, in a school or in a hospital?" *Id.* at 117.

The IJ denied Debek's motion for continuance and ordered his removal. *Id.* at 36-37; 124. The IJ did not believe that Debek should have reneged on the October 2005 agreement and found Debek's testimony incredible. *Id.* at 32-35. The IJ also focused heavily on the fact that Debek stated in his 2004 asylum application that Hezbollah had tried to recruit him, *id.* at 35, while at the hearing he said he had never dealt with Hezbollah, *id.* at 115. He noted that if Debek had been pursuing voluntary departure, as he claimed, he would already have travel documents and could depart to a country other than Lebanon. *Id.* at 36-37.

Debek appealed the IJ decision to the Board of Immigration Appeals ("BIA"). S.A. at 195-205. The BIA noted that before granting a continuance to pursue relief, the agency considers whether an alien can make out a prima facie case of eligibility for that relief. J.A. at 16. The BIA affirmed the IJ's finding that Debek was incredible. *Id.* at 16-17. It further found that Debek could not establish a prima facie claim for asylum based on generalized fears. *Id.* at 17. The BIA's denial of Debek's appeal became the final decision of the agency, which is what we review here. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)).

## II.

Debek asks that we grant his petition and reverse the BIA's decision for several reasons. He contests the credibility finding, and argues that he should have been given an opportunity to explain the discrepancies in his testimony. Pet. Br. at 21-25. He contends that his testimony and evidence meet the prima facie burden for asylum relief. *Id.* at 29-33. Further, Debek alleges that the IJ

coerced him into withdrawing his asylum petition and in doing so violated his due process rights. *Id.* at 18-19. Finally, he argues that the IJ and BIA should have granted him a continuance to file a new petition based on Lebanon's drastically changed conditions that occurred *after* Debek's deal to withdraw his asylum petition. *Id.* For the reasons explained below, these arguments fail.

A.

The IJ has the discretion to grant a continuance for good cause. 8 C.F.R. § 1003.29. The IJ should exercise that discretion favorably when "a prima facie approvable visa petition and adjustment application have been submitted in the course of an ongoing removal hearing." *In re Hashmi*, 24 I. & N. Dec. 785, 790 (BIA 2009).[2] We review the BIA's affirmance of the IJ's denial of Debek's motion for continuance under the abuse-of-discretion standard. *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007).

Debek did not show prima facie eligibility for asylum. To show eligibility for asylum, Debek must demonstrate an unwillingness to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A).

Debek's testimony was his only particularized evidence of a well-founded fear of persecution; thus it follows that if he was not credible, he could not show prima facie eligibility for asylum. J.A. at 16-17. Separate from the adverse credibility finding, the BIA also correctly held that even if Debek's testimony were credible, his fear of returning to Lebanon was too generalized to meet the standard for asylum relief. *Id.* at 17; *see Harchenko v. INS*, 379 F.3d 405, 410 (6th Cir.

---

[2]    The BIA follows its own internal regulations and IJs follow binding BIA decisions. *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 503 (6th Cir. 2008).

5

2004). Ultimately, because of both of these findings, the IJ, and in turn the BIA, properly determined that Debek was not entitled to a continuance.

### 1. Credibility

Substantial evidence supports the BIA's finding that Debek was not credible. *See Ben Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007) (citing *Yu v. Ashcroft*, 364 F.3d 700, 703, 703 n.2 (6th Cir. 2004)) (holding that we review a threshold credibility finding under the substantial-evidence standard). Although "minor and irrelevant inconsistencies" cannot support an adverse credibility finding, we will uphold such a finding if the testimony "plausibly could be viewed as incredible." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004) (citations omitted); *Pilica v. Ashcroft*, 388 F.3d 941, 954 (6th Cir. 2004). The BIA focused on a critical discrepancy in Debek's testimony: at his August 2006 hearing Debek testified that he had never dealt with Hezbollah, yet in his 2004 asylum application he stated that the group tried to recruit him in 2000. Both the IJ and the BIA found this contradiction significant and central to Debek's claim. J.A. at 17. This is because if Debek could not explain his fear of returning to Lebanon, his asylum claim must fail. In addition, this recruitment effort putatively occurred during Debek's only two weeks in Lebanon (in 2000) in a span of more than thirty years.

Debek argues that the IJ should have provided him the opportunity to reconcile the discrepancies in his testimony. Pet. Br. at 21-22, 24. He contends in his petition, as he did before the BIA, that his statement that he had nothing to do with Hezbollah did not contradict his earlier statements about Hezbollah's attempted recruitment. Since he rejected their recruitment efforts, Debek explains, he had nothing to do with them. *Id.* at 21; S.A. at 202. We cannot say that the BIA erred in rejecting this explanation, because Debek cannot show his explanation *compels* a reasonable

6

adjudicator to find his testimony credible. *Yu*, 364 F.3d at 702 (quoting 8 U.S.C. § 1252(b)(4)(B)). Thus, Debek's argument that the IJ should have given him an opportunity to explain his inconsistent testimony fails.

### 2. Failure to Show Reasonable Fear of Persecution

The BIA also addressed Debek's failure to show a particularized fear of future persecution. J.A. at 17. To prove eligibility for asylum, Debek would have to show "fear of persecution [ ] both subjectively genuine and objectively reasonable." *Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2004). An alien's proof of past persecution creates a presumption that he has a well-founded fear of suffering future persecution. *See* 8 C.F.R. § 208.13(b)(1); *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010). But Debek concedes that there was no past persecution here. Pet. Br. at 19. Therefore, there was no presumption that Debek's fear of future persecution was well-founded. He consequently would need to show the basis for his fear with other evidence.

To show a well-founded fear of future persecution, "an applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007) (internal citations and quotation marks omitted). Accepting Debek's testimony as credible, we are left with two possible grounds for an asylum claim. First, based on the hearing, Debek feared the conflict in Lebanon. The BIA correctly points out that "random acts of violence during a period of strife generally do not constitute persecution . . . ." J.A. at 17. A generalized fear during ongoing conflict is insufficient to establish the individualized fear required for asylum, withholding, and protection from torture. *Harchenko*, 379 F.3d at 410. Based on his testimony, Debek feared the dangers of the conflict in Lebanon like anyone living there would. He

7

submits documentation of the dangerous conditions in his home country through news articles and a State Department Report. J.A. at 128-79. He explained his fear at the hearing: "I am a resident of the suburb of Beirut and where am I to go live, in a school or in a hospital?" *Id.* at 17. These general fears do not meet the grounds for asylum. *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) ("[F]ears of returning to the West Bank—shootings, shellings, bombings, settlers' attacks, lack of infrastructure, and lack of access to medical care—are based on the existence of a generalized or random possibility of persecution in [her] native country, which is generally insufficient to establish persecution.").

Second, in his asylum application, Debek stated that he feared Hezbollah because they tried to recruit him in the past; he argues that his political opinion of being anti-Hezbollah is protected grounds for asylum. Pet Br. at 30-31. Here Debek also fails to prove a particularized fear of future persecution. Debek argues that he need not prove that he would be singled out by Hezbollah, but instead he can show that "there is a pattern or practice in his or her country . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." *See id.* at 28 (citing 8 C.F.R. § 1208.13(b)). Although Debek is correct that an alien can show a pattern of persecution, he must also prove "his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable." 8 C.F.R.§ 1208.13(b)(2)(iii)(B).

We have held that imputed political opinion can be grounds for asylum protection. *Abdulnoor v. Ashcroft*, 107 F. App'x 594, 595 (6th Cir. 2004). But in *Abdulnoor*, the evidence showed that the Iraqi government believed the petitioner had been plotting a coup; it issued a death sentence against him. *Id.* In contrast, Debek does not offer any evidence beyond his brief interaction

8

with Hezbollah in 2000 to show that he is part of a persecuted group. Thus, we uphold the BIA's determination that Debek did not show prima facie eligibility for asylum. The BIA did not abuse its discretion when it denied his motion to continue seeking to file such a claim.

Debek also argues that the changed circumstances in Lebanon gave him cause to file an asylum application in June 2006, even though the one-year deadline to file for asylum relief had passed. *See* 8 C.F.R. § 1208.4(a)(4)(ii). Because the continuance was not denied based on the one-year deadline, Debek's changed circumstance has no bearing on the result here.

Debek's continuance request was not limited to his asylum application. He also sought a continuance for his pending applications for withholding of removal and CAT protection. Since Debek cannot establish a prima facie case for asylum, the least stringent of all three remedies, he necessarily cannot show eligibility for withholding of removal or CAT protection. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005) (citing *Pilica*, 388 F.3d at 955).

### B.

Debek argues that his case should be remanded because his due process rights were violated. He maintains that the IJ and the government coerced him into withdrawing his asylum petition and that he was denied a fair hearing. Pet. Br. at 18-21. However, Debek did not raise these arguments to the BIA. *See* S.A. at 196-205. He notified the BIA of his perceived discrimination and hostility from the IJ, but did not assert coercion and due process violations. This Court lacks jurisdiction to review any issues that have not been raised and administratively exhausted below. *See* 8 U.S.C. § 1252(d)(1); *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). Thus, Debek's due process claims are not properly before us.

9

Even if we were to consider his arguments on the merits, they would fail. To show a due process violation, Debek would have to demonstrate that (1) there was a defect in the removal proceeding; and (2) the defect was prejudicial. *See Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008) (quoting *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005)).

Debek asserts that his due process rights were violated because the IJ and government attorneys coerced him into making the October 2005 deal to withdraw his removal petition with prejudice. Pet. Br. at 18-19. We leave for another day the question whether an alien's due process rights are violated where he agrees in a removal proceeding to concede some type of relief. The BIA did not base its denial of the continuance on Debek's agreement to withdraw his 2004 asylum application. *See* J.A. at 15-17. Instead, the BIA focused on the likelihood that Debek could succeed on the merits of a newly filed asylum petition and, as discussed above, concluded he could not. Therefore, since the agreement did not affect the outcome of his case, Debek was not prejudiced.

Additionally, Debek repeatedly asserts that "[d]ue process dictates that an alien must have a full and fair hearing on his applications for relief" and that the IJ and BIA refused to allow him to apply for the relief to which he is entitled. *Id.* at 20-21. This argument also fails. Debek had the opportunity to apply for asylum, withholding, and CAT relief. The IJ had already granted Debek one continuance to wait for an employment visa. Debek's August 2006 hearing had been set for eight months so that Debek could prepare for a voluntary departure or obtain an employment visa. An alien must have a full and fair hearing on his applications for relief, but he is not entitled to infinite revisions of that application and opportunities to delay resolution of his case. *El Harake v. Gonzales*, 210 F. App'x 482, 490 n.15 (6th Cir. 2006) ("It cannot be the case that anytime an alien files an I-485 petition or has an I-130 petition filed on his behalf, the IJ is *required* to grant a continuance.

10

Such a view would conflict with the discretion that the regulations explicitly provide to the IJ."). The agency is within its powers to deny continuances even though other petitions for relief are pending. *See id.* at 489-90; *Ilic-Lee*, 507 F.3d at 1047-48. The denial on its own did not violate Debek's rights.

Since the BIA acted within its discretion and Debek cannot show that he suffered any prejudice, his due process claims would fail on the merits. Moreover, because Debek failed to exhaust his claims, we lack jurisdiction to review them and must deny this portion of his petition.

III.

For these reasons, we deny the petition for review.