**NOT RECOMMENDED FOR PUBLICATION**
File Name:  18a0050n.06

**No. 17-3457**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>ABAZ JASHARI,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Petitioner,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>JEFFERSON B. SESSIONS, III, Attorney General,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>Respondent.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS

---

**BEFORE:  ROGERS, McKEAGUE, and WHITE, Circuit Judges.**

WHITE, Circuit Judge.  Petitioner Abaz Jashari seeks review of a final order of removal issued by the Board of Immigration Appeals.  Jashari argues that the Board erred (1) by failing to treat Jashari's false testimony as "timely retracted," (2) by finding that Jashari had filed a frivolous application for asylum, (3) by finding that Jashari had withdrawn his application for withholding of removal, (4) by denying Jashari's motion to reopen the removal proceedings based on the allegedly ineffective assistance of counsel, and (5) by failing to remand to the Immigration Judge to address allegedly changed circumstances stemming from Jashari's conversion to Christianity.  For the reasons that follow, we affirm.

## I.    Background

Abaz Jashari was born in Kosovo on April 8, 1973.  Jashari is a citizen of the former Yugoslavia, and further identified as a Muslim Albanian Kosovar.  Jashari entered the United

States at an unknown place and time and has provided conflicting information concerning the date, place, and manner of his entry. Jashari's wife and three children have U.S. citizenship.

On January 11, 2008, Jashari filed a Form I-589 "Application for Asylum and for Withholding of Removal" with U.S. Citizenship and Immigration Services (USCIS). Form I-589 is the vehicle by which immigrants can request three different kinds of relief: asylum, withholding of removal, and protection pursuant to the U.N. Convention Against Torture (CAT). Jashari requested all three forms of relief. At this time, Jashari was represented by attorney Svetlana Schreiber.

Prior to filing his I-589, Jashari received a letter informing him of the "consequences of knowingly filing a frivolous application for asylum in the United States." (R. 530.) The letter noted that if Jashari "knowingly file[d] a frivolous application for asylum, [he] WILL BE BARRED FOREVER from receiving any benefits under the Immigration and Nationality Act." (*Id.* (emphasis in original).) The letter defined a "frivolous" application as "one which contains statements or responses to questions that are deliberately fabricated." (*Id.*)

Jashari was interviewed by an asylum officer on May 20, 2008, with the assistance of an Albanian interpreter and signed a document making the following declarations:

> I understand that, under the laws of the United States, if I sign or submit a statement or document I know is false or has no reasonable basis in fact that pertains to a material fact in any application, affidavit, or other document required by the immigration laws or regulations, I may be fined or imprisoned not more than five years.

> I also understand that if I filed my asylum application on or after April 1, 1997, I may be forever barred from receiving any benefits under the Immigration and Nationality Act if I knowingly made a frivolous application for asylum. A frivolous application for asylum is an application that contains deliberately fabricated statements.

> I do solemnly swear/affirm to tell the truth, the whole truth, and nothing but the truth during my interview.

(R. 524.)

On October 28, 2010, the asylum officer denied Jashari's application and referred the case to an Immigration Judge, concluding that Jashari had "failed to demonstrate by clear and convincing evidence that the application was filed within one year after [his] last arrival" in the United States. (R. 525.) The asylum officer noted that Jashari "testified that he arrived at a land border crossing at an unknown point in what he believes was Texas on February 15, 2007" but was "unable to substantiate that claim with any sort of evidence in the form of travel or lodging receipts or any other type of documentary evidence." (*Id.*) The officer also noted that Jashari's "testimony, country conditions, and applicable U.S. laws or policies do not indicate the presence of any changed circumstances that materially affect [his] asylum eligibility." (*Id.*)

At some point between the denial of Jashari's asylum application and his appearance before an Immigration Judge for removal proceedings, Jashari's wife filed a Form I-130 petition to adjust status on his behalf. As part of that petition, Jashari submitted a signed Form G-325A with certain biographic information about himself, including dates and places of residence in the U.S.

On January 15, 2015, Jashari appeared for removal proceedings before Immigration Judge Alison Brown (IJ), represented by Adem Vllasi, a new attorney whom Jashari appears to have retained after being dissatisfied with his prior counsel. At the hearing, Jashari withdrew his pending application. Before allowing him to do so, the IJ informed Jashari that the application was "the only form of relief he's filed with this court in terms of defense against being removed" and that any withdrawal would be with prejudice, "meaning you can't go back to that

-3-

application." (R. 130–31.) The IJ stressed that the application sought to be withdrawn was Jashari's "only application for relief" and was the "only defense against being deported I have in your file." (R. 131–32.) Jashari acknowledged that he understood and still wanted to withdraw the application.

The IJ then addressed Jashari's counsel and noted that she was "not clear . . . what [Jashari] is requesting at this point." (R. 132.) Jashari's counsel responded that there "are two alternative forms of relief here available." (*Id.*) According to counsel, the first of those alternatives was "the fee in for the 485," presumably a reference to Form I-485, the vehicle by which a spouse of a U.S. citizen may apply for lawful permanent residency. (*Id.*) The second alternative, according to counsel, was to request "a continuance because the respondent is eligible under DAPA"—Deferred Action for Parents of Americans and Lawful Permanent Residents, an executive action deferring removal of qualified immigrants—on the basis of Jashari's children with U.S. citizenship. (*Id.*) Jashari's counsel then requested a continuance, but the IJ denied that request.

The court then allowed Jashari to testify in opposition to his removal, which was the original purpose of the hearing. Contrary to the information contained on his I-589, Jashari testified that he entered the United States on either September 15 or 16, 2006, apparently accompanied by his wife. Jashari testified that he arrived by airplane in New York and was using a "travel document" in the name of "Burim Pilana," a person with refugee status that Jashari had met in Kosovo. (R. 141.) All of the information on the travel document belonged to Burim Pilana, but the document bore Jashari's picture. Jashari testified that he was briefly questioned by immigration and then received a Form I-94, which is a standard "Arrival/Departure Record." Jashari testified that he destroyed the I-94 and Burim Pilana's

travel documents after entering the country, explaining that he "was a little scared to keep the documents that did not belong to me." (R. 143.)

The DHS attorney then cross-examined Jashari, beginning by asking whether he wanted to retract any of his answers. When Jasahari responded that he did not wish to retract any of his testimony, the DHS attorney questioned Jashari about the inconsistency between his testimony and the date of entry provided in connection with his I-589 application. When asked why he gave false information to the asylum officer, Jashari said that he "did not speak the language," but also conceded that he had access to an Albanian interpreter at all relevant times. (R. 154–56.) Jashari then testified that Svetlana Schreiber, his attorney, told him to lie about his date of entry "because you cannot stay longer than one year without documents in the United States," apparently in recognition of the requirement that an asylum applicant file his application within one year of entry. (R. 169.) The IJ asked whether Jashari's wife "knew how and when [he] entered the United States." (*Id.*) Jashari responded that his wife knew the details of his entry "because I have discussed with her when I came here" and that he met his wife in the United States two days after arriving, apparently contradicting his earlier testimony that he and his wife arrived together. (R. 169–71.) The IJ then asked why Jashari's wife was not at the hearing to testify on his behalf, and Jashari responded that his wife had to care for their daughter.

The DHS attorney questioned Jashari about the Form G-325A submitted in connection with the petition filed by Jashari's wife. In relevant part, the Form G-325A indicated that Jashari had lived at an address in Ohio from June 2006 until April 2011, which was inconsistent both with his testimony that he arrived in September 2006 and with his initial statement that he had arrived in February 2007. Jashari was unable to provide a coherent explanation for this discrepancy, responding only that he could not "recall the dates." (R. 161.)

At the close of the hearing, the government asked the court to find that Jashari had filed a frivolous asylum application. Jashari's attorney requested an additional hearing at which Jashari's wife could testify regarding "his time and manner of entry." (R. 173.) The IJ denied the request to allow Jashari's wife to testify, noting that the hearing had "been set for three years, so I'm not continuing it to put on further evidence on time, place and manner of entry." (R. 174.) The IJ also noted that "time and manner of entry becomes immaterial if he's ineligible to adjust because he's filed a frivolous asylum application." (R. 173.) On February 12, 2015, the IJ issued a written Order and Memorandum finding both that Jashari was removable and that he had filed a frivolous asylum application.

With respect to the finding of removability, the IJ first set out the applicable law, noting that DHS had charged Jashari with removability and that to rebut such a charge, Jashari "has the burden of proving, 'by clear and convincing evidence, that [he] is lawfully present in the United States pursuant to a prior admission.'" (R. 623 (quoting INA § 240(c)(2)(B)) (alterations in original)). The IJ further noted that "the terms 'admitted' and 'admission' . . . denote procedural regularity . . . rather than compliance with substantive legal requirements." (*Id.* (quoting *Matter of Quilantan*, 25 I&N Dec. 285, 290 (BIA 2010).) The relevant question was thus whether Jashari had been subject to "procedural regularity" when he entered the United States; if the IJ believed Jashari's testimony that he had entered with false documents, this requirement would have been satisfied.

However, the IJ found that Jashari's "testimony was not credible" because he "testified in a manner that was inconsistent with his previously filed I-589 and statements he made under oath at his asylum interview" relating "to the time, place and manner of his entry into the United States." (R. 624.) The IJ further noted that Jashari "acknowledged that he lied both on his I-589

-6-

and at his asylum interview" and, by way of explanation for those lies, stated that "he was instructed to do so by his prior attorney." (*Id.*) The IJ "found this explanation unpersuasive as [Jashari] is an adult who should understand the importance of telling the truth." (*Id.*) The IJ concluded that the "fact that [Jashari] would knowingly lie to government officials completely undermines [his] credibility" and Jashari's "testimony is therefore given no weight." (*Id.*) The IJ also noted that, "[d]espite having over three years to prepare" for the hearing and knowing that he bore the burden of proving the time, place, and manner of his entry to the United States, Jashari "submitted no corroboration of his claim." (*Id.*) The IJ thus found that Jashari was removable. (R. 625.)

The IJ next considered whether Jashari had filed a frivolous asylum application, noting that "a number of procedural safeguards have been established before an immigration judge can make a frivolous determination." (*Id.* (citing *Matter of Y-L*, 24 I&N Dec. 151, 155 (BIA 2007)).) The IJ further noted that "the burden of proof is ultimately on DHS to establish by a preponderance of the evidence that the application was frivolous and any plausible explanation offered by the asylum applicant must be taken into account." (*Id.* (citing *Matter of Y-L*, 24 I&N Dec. at 157).) The IJ found that all of these requirements were satisfied because Jashari had lied about his date of entry after being duly warned about the consequences and was therefore "ineligible for any benefit under the INA." (R. 625–26.)

On July 28, 2015, Vllasi submitted a motion to withdraw as Jashari's attorney, indicating that Jashari had re-hired Svetlana Schreiber, his prior counsel. Vllasi's assertion that Jashari had re-hired Schreiber appears to be based on the fact that Vllasi had received a request from her office for transmittal of Jashari's files. It is unclear whether Jashari was, in fact, represented by

Schreiber at this time; as of August 4, 2015, Jashari was represented by Jennifer Peyton, a new attorney.

On February 1, 2016, Jashari filed a motion to reopen the removal proceedings, arguing that Vllasi's representation constituted ineffective assistance of counsel. Jashari alleged that Vllasi's representation was deficient in five ways. In its entirety, the portion of Jashari's motion describing the allegedly ineffective assistance reads as follows:

1. Failed to properly advise Respondent as to the consequences of withdrawing an application for asylum;

2. Failed to submit evidence to the Court in accordance with the Court's individual order, or with the Immigration Court Practice Manual;

3. Advised Respondent to blame prior Counsel regarding Respondent's use of a fictitious entrance date;

4. Knowing that respondent's wife traveled with Respondent during their mutual September 2006 entrance, advised Respondent not to bring his wife to testify as a witness at the individual hearing; and

5. Failed to clearly articulate or argue the doctrine of timely retraction as a defense to the fictitious entrance date during the January 2015 individual hearing. *See generally Ruiz-Del-Cid v. Holder*, 765 F.3d 635 (6th Cir. 2014).

(R. 598.)

Jashari's motion to reopen was accompanied by a complaint filed by Jashari with the Columbus Bar Association and a sworn statement by Jashari describing his relationship with Vllasi.[1] Just as in the hearing before the IJ, Jashari admitted that he had lied on his asylum application. Contrary to his earlier testimony, however, Jashari now stated that the lie was his idea and that "neither Svetlana or [sic] anyone from her office told" him to lie. (R. 418.) Rather, Jashari stated that Vllasi "told me to lie, and say that Svetlana told me to make a bad date. He

---

[1] The Columbus Bar Association was "unable to find that an ethical violation occurred" and terminated the complaint. (*See* R. 442–443.)

also told me not to bring my wife Sanjie to Court to talk about when and how I came to this Country." (*Id.*)

On February 18, 2016, the IJ denied Jashari's motion to reopen in a written Memorandum and Order. The IJ noted that, in order to "prevail on an ineffective assistance of counsel claim, the Respondent must comply with the specific procedural requirements set for in *Matter of Lozada*[, 19 I&N Dec. 637 (BIA 1988),] and demonstrate that his former counsel's actions or inactions prejudiced him." (R. 584.) The IJ found that Jashari had complied with the applicable procedural requirements, but denied the motion to reopen based on her finding that Jashari had filed a frivolous application, which constituted "a bar to adjustment of status, therefore any action or inaction by prior counsel did not prejudice" Jashari. (*Id.*)

At removal proceedings before the IJ on April 12, 2016, Jashari next argued that he had *not* withdrawn his application for withholding of removal via Form I-589; rather, Jashari argued that he had only withdrawn his application for asylum. In the alternative, Jashari argued that his withdrawal of the full I-589 application was the result of the ineffective assistance of Vllasi. At these proceedings, Jashari submitted documentary evidence including a copy of his Kosovar passport, a letter indicating that he had converted to Christianity from Islam, and copies of the U.S. State Department's "International Religious Freedom Report for 2013" concerning Kosovo and "Human Rights Report" for Kosovo and Serbia. Jashari articulated no argument based upon these documents at this time but, as discussed below, later argued that these documents were evidence of "changed circumstances" that warranted reopening his removal proceedings.

In a written Memorandum and Order dated April 15, 2016, the IJ found that Jashari "knowingly withdrew his I-589 which was his application for both asylum and withholding of removal." (R. 98.) The IJ continued, stating:

> While the Court used the word asylum instead of the form number, the Court made it clear to the Respondent that by withdrawing that application, he had no application or no form of relief pending. Therefore the Respondent has no basis to now assert he believed he still had an application for withholding of removal pending at the time of his January 15, 2015 hearing.

(*Id*.) The IJ rejected the alternative argument that the withdrawal was the result of ineffective assistance, noting that even had counsel failed to inform Jashari of the consequences of withdrawal, the court "made it clear to Respondent that by withdrawing his asylum application that left no applications pending." (*Id*.) The IJ then reiterated her earlier findings that Jashari was removable and had filed a frivolous asylum application. (R. 98–99.)

On August 4, 2016, Jashari appealed the IJ's decision to the Board of Immigration Appeals (BIA). For the purposes of that appeal, Jashari was represented by Aleksandar Cuic, his fourth attorney. Jashari advanced four arguments on appeal. First, he argued that the IJ's determination that he had filed a frivolous asylum application was erroneous because the false date of entry was not material to the asylum claim. Second, Jashari argued that the IJ erred by denying the motion to reopen based on allegedly ineffective assistance of counsel. Third, Jashari argued that the IJ erred in finding that he had withdrawn his I-589 application in its entirety. And, fourth, Jashari argued that his recent conversion from Islam to Christianity constituted changed circumstances and that the IJ erred by not granting Jashari a new hearing on that ground.

In a written decision dated April 3, 2017, the BIA rejected all of Jashari's arguments and denied his appeal. The BIA first affirmed the IJ's finding that Jashari had filed a frivolous asylum application but did not specifically address Jashari's argument that the false date of entry was immaterial. With respect to the allegedly ineffective assistance of counsel, the BIA found that the IJ had "properly determined that any action or inaction by the respondent's prior counsel

did not prejudice the respondent" because he had "filed a frivolous asylum application." (R. 5.) The BIA also found that Jashari had withdrawn his full I-589 application, noting that the IJ had "warned the respondent that the application that he was seeking to withdraw was 'the only application for relief' that he had before her and the respondent replied that he was aware that he would not have any other applications before the Immigration Judge if the Immigration Judge were to allow the withdrawal." (*Id*.) With respect to Jashari's argument "that the Immigration Judge erred in failing to schedule a new asylum, withholding of removal, and CAT hearing in light of changed circumstances," the Board noted that, beyond Jashari's "brief assertion . . . that he had converted to Christianity . . . there is no evidence in the record to support [his] claim of changed circumstances" or that he "will be harmed in his country based on his alleged conversion." (*Id*.) The Board also noted that, despite having several opportunities to do so, Jashari "never argued before the court that circumstances had changed . . . or articulated the need to have a merits hearing based on changed circumstances." (*Id*.) The Board thus dismissed Jashari's appeal in its entirety.

## II.    Discussion

On May 2, 2017, Jashari filed the instant petition for review of the BIA's decision. Jashari is now represented by Altin Nanaj, his fifth attorney. Jashari asks the court to vacate the BIA's decision and remand for further proceedings. For the reasons that follow, Jashari's arguments are meritless and we affirm the BIA's decision in full.

### A. Jurisdiction

Pursuant to 8 U.S.C. § 1252, this court has jurisdiction to review a final order of removal. However, to the extent that a petitioner "has failed to exhaust his administrative remedies with respect to certain claims, this court does not have jurisdiction to address those claims." *Ramani*

*v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004). That is, this court does not have jurisdiction to consider claims that were not properly presented to the BIA. *See, e.g., Harmon v. Holder*, 758 F.3d 728, 737 (6th Cir. 2014) (finding that a claim was unexhausted where the "only mention" of the claim before the BIA "was a generic request on the final page" of the brief); *Lin v. Holder*, 565 F.3d 971, 978 (6th Cir. 2009) ("[T]hese claims have not been administratively exhausted because Lin did not present them in his brief for his BIA appeal.").

### B. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency determination." *Fisenko v. Lynch*, 826 F.3d 287, 290 (6th Cir. 2016) (quoting *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (internal alteration omitted)). Where, as here, "the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (quoting *Karimijanaki v. Holder*, 579 F.3d 710, 714 (6th Cir. 2009)).

A petition for review of an order of removal shall be decided "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). The BIA's factual findings—including a determination that an asylum application was frivolous—are subject to "the highly deferential substantial-evidence standard," under which "we will not reverse a factual determination . . . unless we find that the evidence not only supports a contrary conclusion, but compels it." *Dieng v. Holder*, 698 F.3d 866, 871 (6th Cir. 2012) (quoting *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007)); *see also* 8 U.S.C. § 1252(b)(4)(B). Thus, although we "must take into account contradictory evidence in the record[,] 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

from being supported by substantial evidence.'" *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) (quoting *Consolo v. FMC*, 383 U.S. 607, 620 (1966)).

### C. Jashari's Arguments on Appeal

Jashari advances five separate arguments on appeal. For the reasons set out below, each of these arguments is unpersuasive.

### 1. The "Doctrine of Retraction" Does Not Preclude a Finding that Jashari Filed a Frivolous Application for Asylum

A substantial portion of Jashari's brief on appeal is devoted to the argument that the "doctrine of retraction" precludes a finding that he filed a frivolous application. (*See* Pet. Br. at 16–21.) Jashari briefly touched on the notion of "timely retraction" in his motion to reopen his removal proceedings when he argued that Vllasi was ineffective for failing to "argue the doctrine of retraction as a defense to the fictitious entry date," (*see* R. 598), and mentioned this concept again in his BIA appeal in connection with his position that the IJ erred in denying that motion to reopen, (*see* R. 29) but never raised this argument before the BIA as an independent ground on which to reverse the IJ's findings. Although the BIA affirmed the IJ's decision to deny Jashari's motion to reopen, it did not discuss the "doctrine of retraction."

This court lacks jurisdiction over Jashari's independent "timely retraction" argument because that claim was neither presented to nor considered by the BIA except in relation to Jashari's claim for ineffective assistance of counsel. Jashari has therefore not exhausted his administrative remedies and this court lacks jurisdiction. *See Harmon*, 758 F.3d at 737. Even assuming that the court has jurisdiction over this claim, however, Jashari's argument is unpersuasive for the reasons that follow.

### a. Applicable Law

Jashari relies on *Ruiz-Del-Cid v. Holder,* 765 F.3d 635 (6th Cir. 2014), for the proposition that the Sixth Circuit has recognized a "timely retraction" defense to findings that an applicant submitted a frivolous asylum application. Although the false statements at issue in *Ruiz-Del-Cid* had been made in connection with an asylum application, the issue before the court was *not* whether those statements rendered the application frivolous. Rather, the *Ruiz-Del-Cid* court considered whether the petitioner had committed perjury so as to preclude a finding of "good moral character" pursuant to 8 U.S.C. § 1229b(b)(1)(B), a statute not at issue here. *See Ruiz-Del-Cid*, 765 F.3d at 641.

*Ruiz-Del-Cid* described the "doctrine of retraction" as follows: "Where an alien in an immigration proceeding testifies falsely under oath as to a material fact but voluntarily and *without prior exposure of his false testimony* comes forward and corrects his testimony, perjury has not been committed and the charge based thereon is not sustained." *Ruiz-Del-Cid*, 765 F.3d at 638–39 (emphasis added) (quoting *Matter of M-*, 9 I. & N. Dec. 118, 119 (BIA 1960) (internal alteration omitted)). That is, *Ruiz-Del-Cid* concerned the impact of timely retraction on charges of perjury and did not consider whether timely retraction might preclude a finding that an application was frivolous. The *Ruiz-Del-Cid* court made clear that its discussion focused on a particular context: whether an applicant who lied under oath can still be found to have "good moral character," as defined by § 1229b(b)(1)(B), if he timely retracts his false statement. *See, e.g., id*. at 641 ("To recap: the issue . . . is the statutory requirement that an applicant must be a person of 'good moral character' to merit cancellation of removal[.]"); ("[A]pplicants who gave false testimony but corrected their testimony voluntarily and prior to exposure or threat of imminent exposure may still be persons of good moral character."); (noting that the standard

described by the court "rightly places the IJ's and BIA's focus on the statutory requirement of good moral character").

### b. Discussion

Jashari's argument relies entirely on *Ruiz-Del-Cid*; he cites no other cases and does not recognize that *Ruiz-Del-Cid* concerned an altogether different context. Instead, Jashari incorrectly concludes that "*Ruiz* is on point in this case." (Pet. Br. at 20.) Contrary to Jashari's conclusion, it is well established that "[r]etraction of a materially false application does not necessarily change the fact that a materially false application was 'made.'" *Yousif*, 796 F.3d at 634 n. 4 (citing *Lazar v. Gonzales*, 500 F.3d 469, 478 (6th Cir. 2007)); *see also Matter of X-M-C-*, 25 I. & N. Dec. 322, 326 (BIA 2010)) ("withdrawal of an asylum application after the required warnings and safeguards have been provided does not preclude" a finding that the asylum application was frivolous). Thus, to the extent that Jashari argues that "the formal withdrawal of his application for asylum should prevent" a frivolous finding, "this contention is plainly wrong." *Alexandrov v. Holder*, 475 F. App'x 41, 47 (6th Cir. 2012) (internal quotations omitted); *see also Lazar*, 500 F.3d at 478 ("[W]ithdrawal of [an] asylum application d[oes] not obviate the need for the IJ to determine whether his false application should be deemed frivolous.").

Jashari presents no support for the proposition that timely retraction of false statements precludes a finding that a respondent filed a frivolous application for asylum, and his position is contradicted by established case law. *See Lazar*, 500 F.3d at 478. We therefore reject Jashari's argument that the "doctrine of retraction" warrants vacatur of the BIA's decision.

### 2. The BIA and IJ Properly Found that Jashari Had Filed a Frivolous Application for Asylum

Jashari next argues that the BIA and the IJ erred in determining that he had filed a frivolous asylum application because neither "made a 'materiality' finding in their decision pertaining to Petitioner's false testimony before the asylum court." (Pet. Br. at 23.) Jashari rightly notes that "courts are required to make a finding that 'there is sufficient evidence on the record supporting a finding that a material element of the asylum application was deliberately fabricated,'" but then incorrectly concludes that this requirement was not satisfied. (*See id.* at 23.)

It is unclear whether Jashari argues merely that the BIA and IJ failed to articulate a materiality finding or whether he intends to argue that the record is insufficient to support such a finding. Whatever Jashari's intention, however, his argument is unpersuasive: both the BIA and the IJ found that Jashari had submitted false testimony with respect to a material element of his asylum application, and that finding is supported by substantial evidence. *See Dieng v. Holder*, 698 F.3d 866, 871 (6th Cir. 2012); 8 U.S.C. § 1252(b)(4)(B).

#### a. Applicable Law

"If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice [of the consequences of filing a frivolous asylum application], the alien shall be permanently ineligible for any benefits under this chapter." 8 U.S.C. § 1158(d)(6). An application for asylum is "frivolous" for these purposes "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20; *see also*, 500 F.3d at 475. That is, "frivolousness" requires a finding of "deliberate fraud, not mere triviality or legal insufficiency." *Yousif*, 796 F.3d at 627 (citing *Matter of Y–L–*, 24 I. & N. Dec.

151, 155 n. 1 (BIA 2007)). Instead, the falsehood must be "material" to the application in order to support a finding of frivolousness. *See* 8 C.F.R. § 1208.20.

As the Sixth Circuit has recognized, a finding of frivolousness "is the veritable 'death sentence' of immigration proceedings." *Yousif*, 796 F.3d at 627 (quoting *Alexandrov v. Gonzales*, 442 F.3d 395, 398 n. 1 (6th Cir. 2006)). An IJ may therefore make a finding of frivolousness "only after complying with several procedural safeguards." *Id.* (quoting *Alexandrov*, 442 F.3d at 398). In particular, a finding of frivolousness requires:

> (1) notice to the alien of the consequences of filing a frivolous application, (2) a specific finding by the IJ or the BIA that the alien knowingly filed a frivolous application, (3) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated, and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

*Id.* at 628 (quoting *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007)); *see also* 8 C.F.R. § 1208.20.

The BIA has held that a falsified date of entry is material to an asylum application, at least in situations where, as here, the application is filed more than a year after the real entry date but less than a year after the falsified date. *See, e.g., Matter of M-S-B-*, 26 I. & N. Dec. 872, 876 (BIA 2016). In such a situation, the date of entry is material because it is dispositive of the petitioner's eligibility for relief, given "the general requirement that [an asylum applicant] file the application within 1 year of the date of arrival in the United States." *Id.* at 876 (citing 8 U.S.C. § 1158; 8 C.F.R. § 1208.4(a)(2)).

### b. Discussion

There was no error. Both the IJ and the BIA found that Jashari received notice of the consequences of filing a frivolous application, and Jashari does not contest this finding. (*See* R.

625 (Jashari "was given notice of the consequences of filing a frivolous asylum application");
R. 4 (Jashari "was provided with the required warnings and safeguards").)  Neither does Jashari
contest the IJ's and the BIA's findings that he knowingly filed a frivolous application.  (*See* R.
625–26; R. 4.)  And, Jashari does not challenge the IJ's and BIA's finding that he had the
opportunity to account for any discrepancies but could not do so.  (*See* R. 626; R. 4.)

Jashari does, however, challenge the finding that he had deliberately fabricated a material
element of his application.  Contrary to his position, both the IJ and the BIA made specific
materiality findings that were adequately supported by the record.  (*See* R. 626 (Jashari provided
the false date "in order to establish he filed his asylum application within one year of his entry,
thus making the false information material"); R.4 (Jashari "admitted . . . that he provided a false
arrival date on his asylum application and . . . during his asylum interview in order to establish
his eligibility to seek asylum"); R. 169 (Jashari testified that he lied about his date of entry
"because you cannot stay longer than one year without documents in the United States,"
admitting that his lie was intended to establish his eligibility for asylum).)

All the prerequisites to a finding that Jashari had filed a frivolous application were
satisfied.  *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive
unless any reasonable adjudicator would be compelled to conclude to the contrary[.]").  Jashari's
argument to the contrary is unpersuasive.

### 3.  The BIA and IJ Did Not Err in Denying Jashari's Motion to Reopen

Jashari next argues that the "BIA erred in upholding IJ's denial of Petitioner's motion to
reopen IJ's prior removability and frivolous asylum findings, because prior counsel's ineffective
assistance prejudiced the outcome of Petitioner's case."  (Pet. Br. at 24.)

### a. Applicable Law

The decision whether to grant a motion to reopen is discretionary and, therefore, is ordinarily reviewed for abuse of discretion. *See INS v. Doherty*, 502 U.S. 314, 323 (1992). However, where a motion to reopen involves the legal aspects of claims of ineffective assistance of counsel "we review this question of law de novo." *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005) (citing *INS v. Doherty*, 502 U.S. 314 (1994); *Gjonaj v. INS*, 47 F.3d 824, 826 (6th Cir. 1995)).

Motions to reopen removal proceedings premised on claims of ineffective assistance of counsel must satisfy both procedural and substantive requirements. *See, e.g., Sako v. Gonzales*, 434 F.3d 857, 863 (6th Cir. 2006); *Lyagoba v. Holder*, 393 F. App'x 357, 360 (6th Cir. 2010). First, a claim of ineffective assistance of counsel must comply with the procedural requirements set out in *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). Those requirements are "(1) that the motion be supported by an affidavit detailing counsel's failings, (2) that counsel be informed of the allegations, and (3) that the motion show that disciplinary charges have been filed with the appropriate authority." *Sako*, 434 F.3d at 863 (citing *Matter of Lozada*, 19 I. & N. Dec. at 639; *Ljucovic v. Gonzales*, 144 F. App'x 500, 502 (6th Cir. 2005)). Both the IJ and BIA found that Jashari satisfied the *Lozada* requirements, and all parties agree that that they were satisfied.

After satisfying the *Lozada* requirements, a petitioner must then "establish that, but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States." *Id.* at 863. Put another way, Jashari "carries the burden of establishing that ineffective assistance of counsel prejudiced him or denied him fundamental fairness in order to prove that he has suffered a denial of due process." *Id.* (quoting *Huicochea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). The prejudice inquiry turns on an ex post determination

"whether the alien's claims could have supported a different outcome," and the "fundamental

fairness" inquiry "examines the process afforded ex ante, considering whether the denial of

effective counsel makes such a proceeding fundamentally unfair." *Id.* at 864.

### b. Discussion

Jashari cannot prevail on his claim because he cannot show prejudice or a denial of

fundamental fairness. Jashari argues only that his representation by Vllasi was ineffective; he

makes no claims regarding the representation provided by any of his other attorneys. The entire

relevant portion of Jashari's brief on appeal reads as follows:

> [Jashari] demonstrated through his motion [to reopen] that but for his prior
> counsel's failure to properly advise him on the consequences of withdrawing his
> application for asylum; failure to submit evidence to the court; wrongful [advice]
> to blame prior counsel for the use of the false entry date; wrongful [advice] not to
> bring his wife in court to testify; and, failure to articulate the Doctrine of
> Retraction as a defense to the incorrect date of entry, he would have been able to
> establish entry into the US, and would not have received a frivolous asylum
> finding.

(Pet. Br. at 25.)

The IJ denied Jashari's motion to reopen—and the BIA affirmed—based on the finding

that Jashari had filed a frivolous asylum application and was therefore ineligible for any

immigration benefits. That was correct: unless Jashari can demonstrate that Vllasi's allegedly

ineffective assistance either caused the frivolous finding in the first instance or resulted in the

IJ's or BIA's decision not to set that finding aside, Jashari's claim fails. Thus, to the extent that

Jashari claims that ineffective assistance of counsel resulted in the removability finding, the

claims fail in light of the finding that Jashari filed a frivolous application. The only potentially

relevant claims are therefore those that touch on the frivolous finding: the claim that Vllasi

advised Jashari "to blame prior counsel for the use of the false entry date" and the claim that

Vllasi failed "to articulate the Doctrine of Retraction as a defense to the incorrect date of entry." (Pet. Br. at 25.)

First, even assuming that Vllasi instructed Jashari to lie about what his former counsel had told him to do, that instruction neither prejudiced Jashari nor deprived him of fundamental fairness. None of the criteria for a frivolous finding turns on whether Jashari's prior counsel told him to fabricate the date of entry and, as discussed above, all of the factors are satisfied here. Thus, even assuming that Vllasi instructed Jashari to say that his prior counsel told him to lie, that advice neither prejudiced Jashari nor deprived him of fundamental fairness.

Second, Vllasi's failure "to articulate the Doctrine of Retraction as a defense to the incorrect date of entry" neither prejudiced Jashari nor deprived him of fundamental fairness. As discussed above, timely retraction does not preclude a finding that an immigrant filed a frivolous asylum application.

Because the allegedly ineffective assistance of counsel did not result in the finding that Jashari had filed a frivolous application, Jashari's argument fails. Neither the IJ nor the BIA erred in denying Jashari's motion to reopen his removal proceedings.

### 4. Jashari Voluntarily Withdrew His Entire I-589 Application

Jashari next argues that the "BIA violated [his] due process right by arbitrarily depriving him from [sic] applying for withholding of removal as a form of relief." (Pet. Br. at 26.) This argument is premised on Jashari's assertion that when he withdrew his application for asylum pursuant to Form I-589, he did not intend also to withdraw his application for withholding of removal. This claim is without merit.

### a. Applicable Law

In order to demonstrate a due process violation, Jashari must "demonstrate that (1) there was a defect in the removal proceeding; and (2) the defect was prejudicial." *Debek v. Holder*, 380 F. App'x 492, 497 (6th Cir. 2010) (citing *Ndrecaj v. Mukasey*, 522 F.3d 667, 673 (6th Cir. 2008)). "A due process violation occurs only when 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Lin*, 565 F.3d at 979 (quoting *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005)). In order to prevail on a due process challenge, a petitioner must therefore show that "the alleged violation affected the outcome of the proceeding." *Id*. (citing *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005)); *see also Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004) ("[P]roof of prejudice is necessary to establish a due process violation in an immigration hearing.").

"We review de novo alleged due process violations in immigration proceedings." *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998)).

### b. Discussion

First, there was no "defect" in the removal proceeding because the IJ correctly found that Jashari had withdrawn his entire I-589 application. When Jashari notified the court that he wished to withdraw his application, the IJ informed him that that application was "the only form of relief" he had pending. (R. 130–31.) After indicating that he understood, Jashari proceeded to withdraw his application. Based on this record, it was not error to find that Jashari had knowingly withdrawn his entire I-589 application.

Even assuming that the IJ and the BIA had erred in this determination, however, Jashari cannot demonstrate any resulting prejudice because of the separate finding that he had filed a

frivolous asylum application. As discussed above, that finding prevents Jashari from receiving any immigration benefits. Therefore, even if the IJ and the BIA erred in finding that Jashari had withdrawn his entire I-589 application, that error does not amount to a due process violation.

### 5. Jashari Has Not Demonstrated Changed Circumstances

Finally, Jashari argues that the BIA erred by not "remanding the case to the IJ to address the issue of changed circumstances at a full and fair hearing." (Pet. Br. at 29.) Jashari appears to advance this argument as an additional ground on which he was denied due process. In order to prevail, Jashari must therefore "demonstrate that (1) there was a defect in the removal proceeding; and (2) the defect was prejudicial." *Debek*, 380 F. App'x at 497 (citing *Ndrecaj*, 522 F.3d at 673). On appeal to the BIA, Jashari argued that he was denied due process when he was not granted a new hearing to consider possibly changed circumstances arising from his conversion from Islam to Christianity.

The BIA rejected this argument, finding that "there is no evidence in the record to support the respondent's claim of changed circumstances" and "no evidence in the record to show that the respondent will be harmed in his country based on his alleged conversion." (R. 5.) The BIA further noted that despite being "provided with several opportunities to advise the [IJ] about his changed circumstances," Jashari "never argued before the [IJ] that circumstances had changed . . . or articulated a need to have a merits hearing based on the changed circumstances," suggesting that Jashari had failed to preserve this argument. (*Id.*)

Even assuming that we have jurisdiction because the BIA considered the merits of this argument despite Jashari's failure to preserve it, Jashari has not demonstrated any error. In relevant part, the submitted evidence consists of a letter indicating that Jashari had converted to

Christianity from Islam and copies of the State Department's "International Religious Freedom Report for 2013" concerning Kosovo and "Human Rights Report" for Kosovo and Serbia.

Jashari appears to argue that the information in these documents warrants a finding of "changed circumstances" impacting his eligibility for asylum. Jashari does not, however, cite to any particular part of the report as support of his argument that his circumstances had changed; the entirety of his argument is that the BIA "erroneously found that there is no evidence that [Jashari] will be harmed if return [sic] to his home country." (Appellant's Br. at 29.) We agree with the BIA's conclusion: there is "no evidence in the record to show that [Jashari] will be harmed in his country based on his alleged conversion." (R. 5.) Even assuming that Jashari demonstrated changed circumstances, however, he cannot demonstrate prejudice, a necessary element of a due process claim. As discussed at length above, Jashari filed a frivolous asylum application and the requested relief was denied on that independent basis. Jashari's claim is therefore without merit.

### III. Conclusion

For the reasons set out above, we affirm the Board of Immigration Appeals' order of removal.